CLYDE et al. v. RICHMOND & D. R. CO. et al.

HUIDEKOPER et al. v. DUNCAN et al.

(Circuit Court, D. South Carolina. September 15, 1893.)

1. FEDERAL COURTS—JURISDICTION—ACTION AGAINST RAILROAD COMMISSIONERS.
    A proceeding by receivers of a railroad against state railroad commissioners for relief against alleged unjust and unreasonable rates for freight transportation established by such commissioners, is not a proceeding against the state, within Const. U. S. Amend. 11, inhibiting the exercise of jurisdiction by federal courts in suits brought against one of the United States by citizens of another state.

2. SAME—WHEN STATE A PARTY.
    As such a proceeding presents no question of penalties, the fact that the act authorizing the commissioners to fix rates requires actions to recover penalties for disregarding them to be brought in the name of the state, and for its benefit, does not make the state in any sense a party or privy to the record.

3. SAME—SOUTH CAROLINA DISPENSARY ACT.
    That the state, under the operation of the "dispensary act," approved December 24, 1892, has a material interest in such a proceeding, as a large, and perhaps the only, shipper of liquors, does not make it a party to the proceedings, so as to preclude the federal court from exercising jurisdiction.

4. RAILROAD COMMISSIONERS—ESTABLISHMENT OF RATES—DUE PROCESS OF LAW.
    Railroad companies have the right to require that state railroad commissions fix just and reasonable freight transportation rates, and the changing or lowering of such rates so as to injure the railroad company in its property rights is a deprivation of property without due process of law, within the inhibition of the state and federal constitutions, and justifies the interposition of the courts to inquire into the reasonableness or justness of the rates, and a court, to that end, may appoint a special master to take testimony in relation thereto, and to report thereon.

In Equity. Petition by Frederick W. Huidekoper and Reuben Foster, receivers of the Richmond & Danville Railroad Company, appointed in the suit of William P. Clyde and others against said company and others, for relief against the action of D'Arcy P. Duncan, Henry R. Thomas, and Jefferson A. Sligh, railroad commissioners for the state of South Carolina, in changing freight

transportation rates, and establishing new rates. Reference to a special master ordered to ascertain as to whether the established rate is just and reasonable.

H. L. Bond, Jr., and J. S. Cothran, for petitioners.
D. A. Townsend, Atty. Gen., for respondents.

SIMONTON, District Judge. This is a petition filed in a cause pending in this court. In effect it is an ancillary bill filed by the receivers, praying relief against the action of the board of railroad commissioners. The act complained of is the change of rates for transportation of liquors in glass, and the establishment of a new rate, which is charged to be neither just nor reasonable, nor a proper remuneration for the service rendered. The defense set up is in the nature of a demurrer or plea sustained by an answer. The demurrer or plea sets up several grounds of objection to the jurisdiction of the court. The first alleges want of jurisdiction because of the character of the parties; the others because of the subject-matter. It is maintained that this proceeding is in reality against the state of South Carolina, and cannot be maintained under the eleventh amendment. Two reasons are assigned. The one is that "under the operation of the dispensary law the state has a real material value to itself in this question;" the other is that the railroad law, which authorizes the commission to fix rates, provides that the action for the penalties for disregarding them shall be in the name of the state, and for her benefit. This last objection may be disposed of at once. Whatever course may be followed on an application for an injunction against a suit instituted in the name of the state for penalties, its discussion now would be premature. This case presents no question of penalties. The state is in no sense a party to the record, or privy to the record. The constitutionality of the statute under which respondents act is not in issue. The learned counsel for the state admit that the declaration of this statute, that the rates fixed by the commission shall be sufficient evidence that they are just and reasonable, does not preclude the courts from examining into the fact whether they are just and reasonable. The sole issue in this case is this: Under the statute the respondents are authorized and directed to make just and reasonable rates for the transportation of freight. The petition alleges that certain rates made by them are neither just nor reasonable. In this issue the sovereignty of the state is in no way involved. See Railway Co. v. Dey, 35 Fed. Rep. 873.

The other reason—that under the operation of the dispensary act the state has a material interest in this question, and is therefore a party to this cause—is equally untenable. This assumes that the state is engaged in the business of distributing and selling liquors, and that it is a large, perhaps the only, shipper. Without discussing the question whether in engaging in a business the state does not as to that business strip herself of her sovereign character, the fact that she is a shipper of liquors does not make

her a party to a suit testing the validity of rates fixed by the commission. Were this so, then in every proceeding to obtain a review of the action of railroad commissions in fixing rates every shipper has the right to be a party. The petition had alleged that the sole reason for the reduction of the rate of liquors was the passage of the dispensary law, and the desire to increase the profits made by the state in the sale of liquor thereunder. The second paragraph of the second subdivision of the answer emphatically denies this charge. It denies that there was any consideration of this character moving to the change, or any other consideration than that the rates last fixed by them were reasonable and just. This declaration, made by gentlemen of character and position, settles this question.

The other objections are to the jurisdiction of this court over the subject-matter. These objections are met by the language of Mr. Justice Miller in his concurring opinion in Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. Rep. 462, 702:

"The proper, if not the only, mode of judicial relief against the tariff of rates established by the legislature or by its commission is by bill in chancery, asserting its unreasonable character, and its conflict with the constitution of the United States."

In the same opinion he says:

"There is an ultimate remedy by parties aggrieved [by the acts of a railroad commission] in the courts for relief, and especially in the courts of the United States, where the tariff of rates established either by the legislature or by the commission is such as to deprive a party of his property without due process of law."

This brings us to the merits of the case. In determining and affixing rates for transportation of freight by railroad the several articles subjects of transfer are arranged under a classification based apparently upon their relative value, destructibility, combustibility, bulk, ease or difficulty in handling, and such like considerations. Under this classification the classes are designated by numerals, numbers, and letters, thus: IIII, III, II, I, 1½, 1, 2, 3, 4, 5, 6, A, B, C, D, E, F, G, H, J, K, L, M, N, O, P, T. This mode of classification is of almost universal use in this country and Canada, and it largely promotes interstate commerce. The several articles are arranged in these classes, and rates affixed to them, the highest rate being for the class IIII, and so on, growing less. Anterior to 26th May, 1893, the railroad commission, predecessors of the present board, had either fixed or approved on the class of goods now in question the following rates:

|  | Class. | Class if Released. |
|---|---|---|
| Liquors, whisky, domestic brandies, and domestic wines, in wood, at actual weight, O. R. L., value limited to 75 cents per gallon, and so indorsed on B/L, and quantity.. |  | H |
| Liquors, whisky in wood, N. O. S., at actual weight.... | 2 | 3 |
| Liquors, whisky in boxes or baskets..................... | 1 | 2 |
| Liquors, in glass, boxes, or baskets, N. O. S............. | 1½ | 1 |
| Liquors, in wood, N. O. S., actual weight............... | 1 | 2 |

On 26th May, 1893, the present board made a change whereby liquors, whisky, domestic brandies, and domestic wines in glass, packed, if at carrier's risk, were placed in class 2; if released, in class H. And on 23d June, 1893, the board adopted the following additional classification: "Liquors, whisky, domestic brandies, domestic wines, in glass, securely packed in barrels, value limited to 75 cents per gallon, and so indorsed on B/L, H."

It is said that under this last classification the reduction of rate amounts to 26½ per cent. It is charged to be not just nor reasonable. Any private person in the conduct of his business can place any price he pleases upon his property or his service, and those who choose to deal with him have no right to complain. But persons or corporations exercising a franchise—a right given them by the sovereign authority—cannot charge any price for service rendered under the franchise which is not just and reasonable. To secure the enforcement of this rule so far as railroads are concerned, railroad commissioners are appointed, whose duty it is to see that rates for the transportation of freight, and sometimes of passengers, are just and reasonable. The establishment of such commission is clearly within the constitutional rights of the states. Munn v. Illinois, 94 U. S. 113; Water Works v. Schottler, 110 U. S. 347, 4 Sup. Ct. Rep. 48; Railroad Commission Cases, 116 U. S. 307, 6 Sup. Ct. Rep. 334, 348, 349, 388, 391, 1191. But the power of these commissioners, and, indeed, of that of the states appointing them, is not unlimited. Corporations are, as it is said, the creatures of statute, and owe the breath of their life to the state creating them. But corporations are only an aggregation of persons acting as a unit. So long as they exist they come under the protection of the constitutions of their state and of the United States. Not only is it the right of the public that the rates be just and reasonable, and the duty of the commissioners to see that they are just and reasonable; there is a correlative right in the railroads that the rates imposed on them be just and reasonable, and if they be just and reasonable it is their right that they remain unchanged.

If for the benefit of any part of the people, of the whole people, rates of transportation by railroad are changed and lowered so as to injure the vested rights of the carrier in his property, the provision embodied in every state constitution forbidding the use of private property for public purposes without just compensation, and the provision of the federal constitution forbidding the states to deprive a person of his property without due process of law, present an impassable barrier to such action. Mr. Justice Miller, in Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. Rep. 462, 702; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. Rep. 468; Railroad Co. v. Wellman, 143 U. S. 339, 12 Sup. Ct. Rep. 400, quoting Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. Rep. 334, 388, 1191. The enforcement of these constitutional rights under our system of government belongs to the courts. They can always institute the inquiry whether the rates imposed by a commission are just and reasonable, and on the determination of this question

depends their right to interfere. The measure of what is, in this sense, just and reasonable, is not the value of the service to the person to whom it is rendered. The true measure is the proper return to the individual or corporation rendering the service. The value of a service rendered to a consignee by a carrier depends upon fluctuating circumstances, the condition of the market for goods and for money, the present demand for the goods by the public, his own present supply. The value of the service to the consignee must constantly vary, and can never be easily reached, and as between several consignees at the same point of delivery must also greatly vary. No commission could fix a rate on this basis. On the other hand, the remuneration to the carrier—the remuneration which he should reasonably expect—depends on certain fixed and almost unchangeable facts, the reasonable return for the investment, due regard being had to the public interest.

The question in the case under discussion is, is this rate recently imposed by the respondents, be it a change of rate or a new classification, just and reasonable? Mr. Justice Brewer, while on the circuit bench, defines what are just and reasonable rates, or rather states what rates are not just and reasonable. "A schedule of rates, when the rates prescribed do not pay the costs of service, cannot be enforced." Railroad Co. v. Becker, 35 Fed. Rep. 885. In another case—Railway Co. v. Dey, 35 Fed. Rep. 879—he enters into an elaborate illustration of these terms. "When the rates prescribed will not pay some compensation to the owners, then it is the duty of the courts to interfere, and protect the companies from such rates." He defines "compensation" to mean enough to pay costs of service, fixed charges of interest, and a dividend, however small.

One of the difficulties in this case is that the complaint is of the reduction of one kind of shipment only,—liquors, whisky, domestic brandies, domestic wines, in glass, securely packed in barrels, limited to 75 cents per gallon, and so indorsed on B/L. The respondents deny that this is any reduction at all. These liquors, whiskies, etc., have never before this been transported in that way, packed in barrels. It is a new classification.

It was faintly suggested at the hearing that, as all these shipments are distinctly "released," the liability of the carrier is reduced to a minimum, and, taking into consideration the ease of handling this character of goods, should be in H. But "released" only means that in case of damage the liquor can only be valued at 75 cents per gallon. This explodes the idea of the absence of responsibility, which is magnified by the fact that the fragile packages are concealed in a barrel, and if broken the carrier cannot possibly show when the breakage occurred.

Another and a very strong ground is that by the operation of the dispensary law the shipments are largely increased, and so counterbalance the low rate. This act requires all liquors to be carried to Columbia, and from thence to be distributed to the several dispensaries. This distribution is for the most part in small packages,

packed in barrels, and under the short-haul rates. The emptied barrels, sometimes with the emptied packages, are returned to Columbia, and this process is repeated several times during the year. But the question always remains, does this rate pay the cost of transportation? Is it remunerative? If it be not, then the increase of business increases the loss. On the other hand, reduction of rates on one article does not necessarily reduce income. Railroad Co. v. Wellman, 143 U. S. 339, 12 Sup. Ct. Rep. 400. Nor is there anything stated and admitted in the record from which the court could say that this change or reduction or new classification, call it as we may, reduces the income of the petitioners below the remunerative point. In this preliminary proceeding this may have been impossible.

It is ordered, that for this case R. W. Shand, Esq., be appointed special master. That he take testimony as to whether the charge complained of in this record is just and reasonable in the sense indicated in this opinion; that is to say, is it a just and reasonable reward to the petitioners for the service rendered? Does the rate proposed affect the income of the petitioners? In what way, and to what extent?—with leave to report any special matter.